UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LOUIS GERI,<br><br>Defendant. | Case No. |

**GOVERNMENT'S STATEMENT OF OFFENSE
IN SUPPORT OF GUILTY PLEA**

I. **Elements of the Offense**

The essential elements of Count 1, Hobbs Act Extortion by Wrongful Use of Force, Violence, or Fear, each of which the Government must prove beyond a reasonable doubt are:

1. Louis Geri attempted to obtain property for himself or a third party from another person with the consent of such person or his agent;

2. Louis Geri attempted to induce the victim's consent by the actual or threatened use of force, violence, or fear, including fear of economic loss;

3. Louis Geri's use of force, violence or fear was wrongful;

4. Louis Geri attempted to obtain the property in a manner that would affect interstate or foreign commerce.

The essential elements of Count 2, Possession of an Unregistered Firearm (Destructive Device), each of which the Government must prove beyond a reasonable doubt are:

1. That Louis Geri knowingly possessed a National Firearms Act firearm;

2. That the firearm was a destructive device;

3. That Louis Geri knew of the characteristics of the firearm, that is, that it was a destructive device;

4. That the firearm was or could readily have been put in operating condition;

5. That the firearm was not registered to the defendant in the National Firearms Registration and Transfer Record. It does not matter whether Louis Geri knew that the firearm was not registered or had to be registered.

## II. Penalties for the Offense

The penalties for Count 1, in violation of 18 U.S.C. § 1951, are as follows:

- A maximum term of 20 years imprisonment;
- A fine not to exceed $250,000;
- A term of supervised release of not more than 3 years; and
- A special assessment of $100.

The penalties for Count 2, in violation of 26 U.S.C. § 5861(d), are as follows:

- A maximum term of 10 years imprisonment;
- A fine not to exceed $10,000;
- A term of supervised release of not more than 3 years; and
- A special assessment of $100.

## III. Factual Proffer

Had this case proceeded to trial, the Government's evidence would have established the following facts beyond a reasonable doubt:

On the evening of October 4, 2025, at approximately 7:15 p.m., the defendant, Louis Geri, rode his motorcycle to St. Matthew's Cathedral, located at 1725 Rhode Island Ave NW Washington, D.C., and parked on the street directly in front of the church. The defendant unloaded a tent, multiple bags, and other personal belongings and placed them on the steps leading to the church's main entrance. He then assembled the tent on those steps, unpacked his belongings, and

entered the tent, where he remained overnight.

Inside the tent, the defendant possessed more than 100 explosive devices that he had manufactured and transported to the location from outside of Washington D.C., along with a nine page list of written demands. The defendant intended to use the threat of death or significant property damage from these explosive devices to coerce negotiations regarding his demands from the Federal Government, St. Matthew's Church, the Supreme Court of the United States, and other groups and entities. The defendant was aware that the Red Mass, a high-profile public event, was scheduled to occur at St. Matthew's Cathedral the following morning. The defendant had purchased the materials for the explosive devices, manufactured the explosive devices, and transported the explosive devices to Washington, D.C., in preparation to use the threat of death or destruction at Red Mass in furtherance of negotiations.

On October 5, 2025, at approximately 5:00 a.m., members of the Metropolitan Police Department ("MPD") began sweeping the streets and sidewalks surrounding St. Matthew's Cathedral in preparation for the Red Mass. At approximately 5:07 a.m., MPD officers approached the defendant and informed him that he would need to move his tent. The defendant refused and requested that MPD call federal agents to negotiate a list of handwritten demands.

The defendant then threatened to throw one of his explosive devices into the street to demonstrate its power. He stated that he possessed more than one hundred explosive devices and that "several of your people are gonna die from one of these" if he was unable to negotiate his demands. The defendant subsequently provided a nine-page list of written demands to the officer. During this encounter, an MPD officer observed multiple explosive devices in the defendant's hands and inside the tent. After observing the explosive devices, law enforcement withdrew from the defendant's tent for safety reasons and established a barricade around the defendant's tent.

The defendant's written demands included requests for hundreds of thousands of dollars in payments to himself and others; extended hotel stays at the Mayflower Hotel in Washington, D.C.; an expatriation flight to Japan; that the Supreme Court remove the state of Arizona from the United States, declare it a "foreign enemy," and limit the movements of the residents of Arizona; and numerous requests to leaders of the Catholic and Jewish faiths.

MPD officers placed a barricade around the defendant's tent. At 5:53 a.m., the defendant left the tent, apparently to urinate. At that time, MPD officers approached and apprehended the defendant on the corner of the church steps. The defendant had one explosive device in his pocket, along with a butane lighter. Police searched the defendant's tent and found more than one hundred similar explosive devices.

Following his arrest, the defendant waived his *Miranda* rights and agreed to a custodial interview with law enforcement. During his interview, the defendant described to his explosive devices as "grenades" and "rockets." He stated that the devices consisted of a proprietary mixture including nitromethane, magnesium, charcoal, and thermite. The defendant further stated that he purchased the materials in Arkansas and then traveled to Virginia, where he manufactured the explosive devices for use at the Red Mass.

The defendant admitted that he intended to use the threat of force posed by his explosive devices to coerce negotiations of his demands. He further admitted he was willing to use the devices to harm people and property—including St. Matthew's Cathedral, the White House, the Washington Monument, the Capitol, and the Supreme Court as part of his negotiations. The potential destruction or attempted destruction of these essential government institutions, including places of worship, and major tourist attractions would have affected interstate and foreign commerce.

A representative sampling of six explosive devices was submitted for testing at an FBI laboratory. Testing confirmed the devices were improvised explosive devices and that the proprietary mixture used in the devices contained nitromethane. The devices included fuel, an initiator, a main charge, and fuel enhancements, meeting the definition of "destructive devices." The destructive devices were in operable condition. The defendant manufactured the destructive devices and was aware of their characteristics. The defendant did not register the destructive devices in the National Firearms Registration and Transfer Record.

This proffer of evidence is not intended to constitute a complete statement of all facts known by the parties but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty to the charged crime. This Statement of the Offense fairly and accurately summarizes and describes some of the defendant's actions and involvement in the offenses to which he is pleading guilty.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES
ATTORNEY

*/s/ Kraig Ahalt*
KRAIG AHALT
Assistant United States Attorney
United States
Attorney's Office 601
D. Street, NW
Washington, DC 20579
(202) 803-1588
Kraig.Ahalt@usdoj.gov

5

## DEFENDANT'S ACKNOWLEDGMENT

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all the facts known to me regarding this offense. I have read every word of this Statement of the Offense and reviewed it with my attorney. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged.

Further, I have discussed with my attorney Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. I knowingly and voluntarily waive the rights that arise under these rules in the event that I withdraw my guilty plea, withdraw from my Plea Agreement after signing it, or breach my Plea Agreement. I understand that, in such instances, the Government will be free to use against me, directly and indirectly, in any criminal or civil proceeding, any statements I have provided pursuant to the Plea Agreement, after it is signed, or after entry of the Plea Agreement, including any statements I made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 2/19/2026

Louis Geri

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and reviewed it fully with my client. I concur in my client's desire to agree to this Statement of the Offense as true and accurate.

Further I have discussed with my client Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. I have discussed with my client that, by signing the Plea Agreement, my client waives the rights that arise under these rules in the event my client withdraws his guilty plea, withdraws from the Plea Agreement after signing it, or breaches the Plea Agreement.

Date: 2/19/2026

Elizabeth Mullins
Attorney for Defendant